UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LINDA VAN ZUTPHEN, <br> Plaintiff, <br> v. <br> ANDREW SAUL,[1] <br> Defendant. | Case No. 18-cv-00057-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS** <br><br> Re: Dkt. Nos. 23, 34 |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Upon review of the parties' papers and the administrative record ("AR"), the Court GRANTS IN PART and DENIES IN PART plaintiff's motion and GRANTS IN PART and DENIES IN PART defendant's cross-motion. The matter is REMANDED for further administrative proceedings consistent with this Order.

**BACKGROUND**

By the time of the first administrative hearing on July 23, 2014, plaintiff Jane Linda Van Zutphen was a fifty-seven-year-old woman with a high school education. AR 27. Her work experience includes employment as a part-time ticket seller for the Giants. *Id.* at 1040. Plaintiff's disability traces back to "five automobile accidents and . . . a work injury in 1993." *Id.* at 136. According to a Function Report that plaintiff completed on March 19, 1997, she sustained neck, back, and leg injuries through "several consecutive automobile accidents." *Id.* at 119. Her back and leg injuries were aggravated by her then employer who refused to decrease her work hours or

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

workload. *Id.* In 1997, she reported having a "back and neck problem which radiates pain through the back and legs." *Id.* at 78. Plaintiff reported at that time that she was "unable to stand, sit, walk, lift, [or] bend without being in pain," which prevented her from working. *Id.*

On March 11, 1999, plaintiff was found disabled as of August 26, 1994, and entitled to disability insurance benefits under Title II of the Social Security Act, due to "severe mental depression and physical pain."[2] *Id.* at 22, 491. The Administrative Law Judge ("ALJ") found that plaintiff met Medical Listing 12.04 of 20 C.F.R. Part 404, Appendix 1 to Subpart P. *Id.* at 491. On October 30, 2006, the Social Security Administration ("SSA") found her disability to be continuing. *Id.* at 24, 496, 506. Plaintiff's disability benefits continued until July 2009, when her benefits ceased due to work activity. *Id.* at 22, 671-72.

On October 26, 2011, plaintiff filed for expedited reinstatement of benefits and received provisional benefits. *Id.* at 512, 514. On March 5, 2012, the SSA determined that plaintiff was no longer disabled as of March 1, 2012. *Id.* at 497. Plaintiff filed for reconsideration and on July 16, 2012, the SSA found that her disability had ceased as of October 1, 2011. *Id.* at 498.

Plaintiff requested a hearing before an ALJ. *Id.* at 537. Plaintiff's hearing before ALJ Michael Blume was held on July 23, 2014. *Id.* at 22. The ALJ issued a decision on September 25, 2014, finding that plaintiff was not disabled as of July 1, 2009. *Id.* at 19, 22. On April 13, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id.* at 12.

Plaintiff then filed an action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g), and the action was assigned to the undersigned Judge. *See Van Zutphen v. Colvin*, No. 15-cv-02429-SI (filed June 2, 2015). Both parties moved for summary judgment. AR at 1091-92. On September 26, 2016, this Court entered an order granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment. *Id.* at 1090-1106; *see also Van Zutphen v. Colvin*, No. 15-cv-02429-SI, Dkt No. 20. The Court found that the ALJ committed legal error in finding medical improvement at step three of the continuing

---

[2] At the same time, plaintiff applied for and was found eligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. However, the SSI application is not part of the administrative record in this case, and those benefits are not the subject of the present appeal.

2

disability review because the ALJ's decision failed to compare any medical evidence that pre-dated the October 30, 2006 Comparison Point Decision ("CPD")[3] with current medical evidence and addressed only plaintiff's depression when the initial disability finding was based on depression and physical pain/fibromyalgia. *Id.* at 1097-1110. The Court also found that the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony. *Id.* at 1100-04. The Court remanded the case for further proceedings. *Id.* at 1106.

The Appeals Council then vacated the Commissioner's decision and remanded the case to the ALJ for "the purpose of completing the record and holding a *de novo* hearing." *Id.* at 1113. The SSA notified plaintiff of a hearing to be held on September 6, 2017, and invited plaintiff to submit additional evidence in support of her claim. *Id.* at 1209-16. Plaintiff confirmed that she would attend the hearing. *Id.* at 1227. On September 6, 2017, ALJ Blume held a rehearing. Plaintiff failed to appear, although her non-attorney representative was present. *Id.* at 1066, 1322-24. On October 16, 2017, the ALJ issued an unfavorable decision, again finding that plaintiff's disability ended as of July 1, 2009. *Id.* at 1062, 1086. The Appeals Council did not assume jurisdiction and the ALJ's decision has become the final decision of the Commissioner after remand. *See* 20 C.F.R. § 404.984.

On January 4, 2018, plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No.1. The Court granted multiple requests for extensions of time to both parties. *See* Dkt. Nos. 17, 20, 29, 31, 33. Plaintiff, who is represented by counsel, moves for summary judgment, asking this Court to reverse the ALJ's decision and remand the case to the Commissioner for reinstatement and calculation of past due benefits since July 1, 2009. Dkt. No. 23 ("Pl.'s Mot."). Defendant has filed a cross-motion for summary judgment, arguing that the ALJ's decision was supported by substantial evidence and asking that this Court affirm the ALJ's decision and deny plaintiff's request to reinstate benefits. Dkt. No. 34 ("Def's Cross-Mot."). Although the Court granted plaintiff's request for an extension of time to file a reply brief on June 20, 2019, plaintiff

---

[3] The Comparison Point Decision as used here is the date of "the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *See* 20 C.F.R. § 404.1594(b)(1). The ALJ determined and the parties agree that the CPD in this case is October 30, 2006, the date that plaintiff was most recently found to have a continuing disability. *See* AR 506.

has filed no reply as of the date of this Order. *See* Dkt No. 36.

**LEGAL STANDARD**

I. **Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). A court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is the relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). Courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The substantial evidence standard is a deferential standard of review. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). If additional proceedings can remedy defects in the original administrative proceedings, a Social Security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). A decision of the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

II. **Continuing Disability Review**

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability

arises in her favor." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also Medina v. Colvin*, No. 14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) (discussing the Ninth Circuit's reaffirming this presumption after 1984 amendments to the Social Security Act). The Commissioner periodically reviews whether the claimant continues to be entitled to benefits. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

At continuing disability review, an ALJ conducts an eight-step inquiry:

(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

5

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

(9) We may proceed to the final step, described in paragraph (f)(8) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make a finding under paragraph (f)(7) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (f)(7) of this section. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim under paragraph (f)(7) of this section and make a finding about whether you can perform your past relevant work.

20 C.F.R. § 404.1594(f).

## ALJ DECISION

Following the rehearing directed by this Court, the ALJ applied the eight-step analysis described in 20 C.F.R. § 404.1594 regarding plaintiff's continuing disability status. AR 1067. At step one, the ALJ determined that plaintiff did not engage in substantial gainful activity through July 1, 2009. *Id.* at 1068. At step two, the ALJ found that plaintiff had the medically determinable impairments of supraventricular tachycardia ("SVT") and depressive disorder not otherwise specified ("NOS") as of July 1, 2009, but that since July 1, 2009, plaintiff has not had an impairment or combination of impairments that meet or medically equal a Listing. *Id.* at 1068-70. The ALJ discussed the relevant medical record and concluded that "there is insufficient evidence to satisfy [the criteria for Listing 4.05 (SVT)], or to establish that SVT, either alone or in combination with another impairment, significantly limited plaintiff's ability to perform basic work activities for a period meeting the durational requirement of 20 CFR 404.1509." *Id.* at 1070. The ALJ also concluded that plaintiff's medically determinable mental impairment did not meet the criteria of paragraph A or paragraph B of Listing 12.04 (Depressive disorder). *Id.* at 1070-72. In finding

6

plaintiff's mental impairment failed to meet the criteria of Listing 12.04 paragraph B, the ALJ accorded significant weight to the assessments of the State agency psychological consultants and gave great weight to the opinion of consultative psychiatric examiner Dr. Arudra Bodepudi, M.D. *Id.* at 1071-72. The ALJ explained that Dr. Bodepudi's opinion was "the most complete and detailed psychiatric evaluation in the record" and was "consistent with the overall evidence." *Id.* at 1072.

At step three, the ALJ found that medical improvement occurred as of July 1, 2009. *Id.* at 1073. The ALJ first discussed the medical evidence leading to the CPD on October 30, 2006. The ALJ then addressed post-CPD medical evidence leading to the finding of medical improvement with respect to plaintiff's depression and chronic pain.

At step four, the ALJ found that plaintiff's "medical improvement is related to the ability to work because, as of July 1, 2009, [plaintiff] no longer had an impairment or combination of impairments that met or medically equaled the same listing that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i))."[4] *Id.* at 1082. Because of this finding at step four, the ALJ skipped to step six. *See* 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found, in contrast to the previous decision, that plaintiff "did not have a severe impairment" as of July 1, 2009.[5] AR 1082. Although this finding should have ended the analysis of the continuing disability review, resulting in a finding that plaintiff's disability had ended, *see* 20 C.F.R. § 404.1594(f)(6), the ALJ moved to the next step and discussed plaintiff's residual functional capacity ("RFC").

At step seven, the ALJ found that "[a]s of July 1, 2009, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should not be exposed to unprotected heights or to hazards such as

---

[4] 20 C.F.R. § 404.1594(c)(3)(i) states that, for claimants previously determined to be disabled because they met a Listing, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work."

[5] In his decision on September 25, 2014, the ALJ found that as of July 1, 2009, plaintiff continued to have a severe impairment or combination of impairments as to her SVT, but that plaintiff's fibromyalgia or chronic pain syndrome, alleged neck pain and back pain, and depressive disorder NOS were non-severe. AR 25.

7

moving machinery." AR 1082. Following the two-step process described at 20 C.F.R. § 404.1529, the ALJ found that plaintiff's "medically determinable impairments could reasonably have been expected to produce the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms after the CPD are at times internally inconsistent, and inconsistent with other evidence of record." *Id.* at 1084. In so finding, the ALJ gave significant weight to the opinion of cardiologist and medical expert Dr. Mitchell Collman, M.D., who testified at the July 2014 hearing. *Id.* Dr. Collman found that "there were no exertional limitations but that the claimant should be precluded from driving a bus, flying a plane, and being around dangerous machinery or unprotected heights." *Id.* The ALJ accorded little weight to the opinion of consultative internist Dr. Farah M. Rana, M.D., that plaintiff was limited to light exertional work. *Id.* at 1085. The ALJ also found "significant inconsistencies between [plaintiff's] report of pain and other evidence of record" and therefore found "the evidence does not support the degree of limitations alleged." *Id.* In continuing through step seven, the ALJ assumed that plaintiff had no past relevant work. *Id.* at 1085 & n.1.

At step eight, the ALJ found that "[a]s of July 1, 2009, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566)." *Id.* at 1086. The ALJ found that as of July 1, 2009, plaintiff's nonexertional limitations "had little or no effect on the occupational base of unskilled work at all exertional levels" and so a finding of "not disabled" was appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. *Id.* Accordingly, the ALJ found plaintiff's disability ended as of July 1, 2009. *Id.*

## DISCUSSION

Plaintiff moves for summary judgment, seeking a determination that the ALJ's unfavorable decision is erroneous. Plaintiff argues that the ALJ failed to discuss the 2006 CPD findings and her pain and fibromyalgia symptoms, and that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's testimony. Plaintiff urges that this case be remanded solely for calculation of benefits or that her benefits be immediately reinstated if remand is for further proceedings.

8

Defendant also moves for summary judgment, arguing that the ALJ correctly found medical improvement, properly assessed the medical opinions, and gave valid reasons for discrediting plaintiff's testimony.

## I. Determination of Medical Improvement

Plaintiff first argues that the ALJ's finding of medical improvement at step three is not supported by substantial evidence.[6] Pl.'s Mot. at 1, 10. Defendant asserts that "the ALJ properly found that Plaintiff's medically determinable impairments medically improved as of July 1, 2009." Def.'s Cross-Mot. at 5.

### A. Comparison of Medical Evidence from CPD with Current Medical Evidence

The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s) (see § 404.1528).

20 C.F.R. § 404.1594(b)(1); *see also* 20 C.F.R. § 404.1594(c)(1) ("Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medial evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).").

In its prior order, this Court found legal error where the ALJ failed to cite to any medical evidence leading to the 2006 CPD and directed on remand that the ALJ compare the medical evidence at the time of the CPD with the post-CPD evidence. AR 1099-1110. In addition, since plaintiff's initial disability finding was based on depression and physical pain and the ALJ only

---

[6] A heading in plaintiff's brief seems to allege that the ALJ erred in finding that the combination of her impairments did not meet any Listing. *See* Pl.'s Mot. at 10. In the paragraphs that follow, however, plaintiff makes no specific argument against this finding but focuses solely on the determination of medical improvement, an inquiry that applies only if a Listing is not met. The Court will not address findings that the plaintiff "failed to argue . . . with any specificity in [her] briefing." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

9

United States District Court
Northern District of California

1 addressed depression in that same decision, the Court also directed the ALJ to consider plaintiff's

2 physical pain. *Id.* Plaintiff now alleges that the ALJ failed to comply with this Court's remand

3 order by not sufficiently discussing the evidence at the CPD or discussing her physical pain at step

4 three. Pl.'s Mot. at 1, 10, 14. Defendant argues that "the ALJ cited to medical evidence of

5 depression, chronic pain, and fibromyalgia that pre-dated the October 2006 CPD and compared the

6 prior and current medical evidence of these conditions in his decision (AR 1070-82, 1090-1106,

7 1097-1100)." Def.'s Cross-Mot. at 8.

8 The Court agrees with defendant. In the October 2017 decision following remand, the ALJ first addressed the symptoms, signs, and/or laboratory findings related to the plaintiff's condition at the CPD and compared them with medical evidence after the CPD. AR 1073-82. The ALJ relied on a host of evidence before and at the time of the CPD, including the following: (1) plaintiff was prescribed Valium in 2005 due to stress caused by legal proceedings about her family; (2) on April 27, 2005, Dr. Harry Fung, M.D., plaintiff's treating physician at Kaiser, restricted her from signing papers due to chronic pain from fibromyalgia and noted that she was tender to palpation at the neck, shoulders, upper and lower back, and hips; (3) on physical examination by treating physician Dr. Anastasia Cua, M.D., on October 13, 2005, supple neck with point tenderness at multiple areas was noted and straight leg raising was negative; (4) on April 26, 2006, Dr. Cua again noted point tenderness at multiple areas; (5) in the Function Reports plaintiff submitted in 2005 and 2006, she described the conditions and severity of her symptoms, including episodes of heart palpitation, the need to use crutches, and the inability to drive or leave home unaccompanied; and (6) consultative psychologist Dr. Sokley Khoi, Ph.D., examined plaintiff at the request of the SSA and concluded that plaintiff had marked impairment in tolerating the stress of a normal workday and in the ability to interact appropriately with co-workers, supervisors, and the public, and moderate to marked impairment in the ability to maintain adequate pace or persistence to perform complex tasks. *Id.* at 1073-74.

26 The ALJ then addressed post-CPD medical evidence leading to the finding of medical

27 improvement with respect to both depression and chronic pain. Regarding plaintiff's depression,

28 the ALJ cited the following: (1) the medical record documented no stress caused by any legal

10

1  proceedings and no ongoing prescription for Valium; (2) non-psychiatric records from Kaiser described plaintiff's mental status as "within normal limits, with no suggestion that she had any impairment of any ability to perform basic mental work functions after July 1, 2009"; (3) Dr. Rana examined plaintiff on February 6, 2012, at the request of the SSA and noted a "clear sensorium, normal affect, normal speech and comprehension"; (4) Dr. Bodepudi examined plaintiff at the request of the SSA on February 9, 2012, and found that plaintiff had no marked impairment in numerous areas in which Dr. Khoi had found marked impairment in 2006; (5) subsequent medical records continued to document plaintiff's normal psychiatric status when plaintiff was seen for physical illnesses; and (6) other evidence of record, for example, that plaintiff was no longer housebound but made increased earnings for years after the CPD and was able to work in an office and use a computer as a ticket seller. *Id.* at 1075-77.

As to plaintiff's chronic pain, the ALJ compared the pre-CPD medical record with the post-CPD record and determined that the weight of the medical record established that plaintiff's condition had improved dramatically since the CPD because of: (1) medically documented improvement of plaintiff's ability to sign her name due to chronic pain; (2) resolution of her need to use crutches and a cane due to chronic pain; (3) resolution of her pre-CPD symptoms that allegedly caused an inability to drive, to walk more than half a block, and to engage in other activities of daily living; and (4) improvement of her neck and back pain as evidenced by the results of examinations that Dr. Cua, Dr. Rana, and treating physicians Dr. Ralph Koo, M.D., and Dr. Nusrat Chaudry, M.D., conducted respectively between 2010 and 2013. *Id.* at 1077-82.

The Court finds that by comparing the medical records before and after the CPD and by evaluating plaintiff's physical and mental conditions, the ALJ has corrected the legal error committed at step three in the previous decision.[7] The ALJ properly compared the medical evidence prior to and at the CPD with medical evidence after the CPD, and the finding of medical

---

[7] Plaintiff and defendant also dispute whether, according to the regulations, a finding that plaintiff no longer meets a Listing means that medical improvement has occurred per se. Pl.'s Mot. at 8-9; Def.'s Cross-Mot. at 6. The Ninth Circuit has not ruled on this issue, and the Court need not resolve it here. As discussed above, *see* n.6, *supra*, plaintiff does not make any argument challenging the finding that her conditions no longer meet a Listing, and the Court has found that the ALJ made the requisite comparison of pre- and post-CPD medical evidence at step three.

11

improvement is supported by substantial evidence.

B.     **Timing of Medical Improvement**

The next question is whether substantial evidence supports the finding that there has been medical improvement in plaintiff's condition *as of July 1, 2009*. Plaintiff argues that the ALJ's finding of medical improvement lacked substantial evidence because the ALJ referred to no medical records between July 1, 2009, and January 14, 2010, to support the medical improvement date and instead sought to support his "leap of faith" by relating evidence later than January 14, 2010, back to July 1, 2009. Pl.'s Mot. at 15-17. Defendant argues that the ALJ did not cite medical evidence from July 1, 2009, to January 14, 2010, because plaintiff did not seek treatment during that time. Def.'s Cross-Mot. at 6. Defendant also argues that the ALJ reasonably relied on later medical opinions in support of his medical improvement finding as of July 2009, and also that the ALJ supported the July 2009 date by citing to plaintiff's work history. *Id.* at 7-8.

The Court agrees with plaintiff that substantial evidence does not support the ALJ's selection of July 1, 2009, as the date of medical improvement (and which therefore formed the basis for the conclusion that this was the date she was no longer disabled). The ALJ failed to explain what of significance occurred in July 2009. Rather than supporting this finding with substantial evidence, the ALJ's decision reads as if the ALJ first selected the July 1, 2009 cessation date and then worked backwards from there.

Although the ALJ mentioned in passing that plaintiff's benefits were terminated in July 2009 due to work activity, *see* AR 1065, the ALJ did not cite this as the reason for finding medical improvement as of this date. Moreover, the ALJ noted elsewhere in the decision that in 2009 plaintiff had monthly earnings *lower* than the amount that would give rise to a presumption of substantial gainful activity. And nowhere did the ALJ clarify whether or if plaintiff's earnings increased significantly in the month of July in particular. *See id.* at 1068.

Nor do the medical records show any improvement on July 1, 2009, specifically. Defendant does not dispute that there are no medical records between July 1, 2009, and January 14, 2010. In *Attmore v. Colvin*, 827 F.3d 872 (9th Cir. 2016), the Ninth Circuit reviewed the decision of an ALJ

12

who found that a claimant for Social Security disability benefits "was disabled as of April 15, 2007, but had medically improved to the point she was no longer disabled beginning on March 24, 2009." *Attmore*, 827 F.3d at 874. Although the Ninth Circuit ultimately found that substantial evidence did not support the ALJ's finding of medical improvement, it was at least clear how the ALJ had reached the March 24, 2009 cessation date. The medical record contained a note from the claimant's treating psychiatrist dated March 23, 2009, stating that the claimant was "feeling pretty well" with "no specific complaints." *Id.* In the decision finding that disability ended as of March 24, 2009, "the ALJ described in detail Attmore's symptoms as of March 24 and pointed to evidence indicating that she had 'shown improvement in the area of social functioning.'" *Id.* at 877. Here, by contrast, the ALJ's decision contains no such explanation of what occurred on July 1, 2009, to render plaintiff no longer disabled, nor does the ALJ point to any medical records from this date.

It is further worth noting that when plaintiff first applied for reinstatement of benefits, the SSA determined she was no longer disabled as of March 1, 2012. AR 1065. When she filed for reconsideration, the SSA determined she was no longer disabled as of October 1, 2011. *Id.* And when plaintiff again challenged that decision by requesting a hearing before the ALJ, the ALJ concluded she was no longer disabled as of July 1, 2009. *Id.* That the SSA reached three different disability cessation dates, each one earlier than what the SSA previously found, is further reason why the Court finds the ALJ should have provided an explanation of why he found plaintiff no longer disabled *as of July 1, 2009.*

Accordingly, the Court finds the disability cessation date of July 1, 2009, is not supported by substantial evidence and REMANDS this case for the ALJ to reevaluate the cessation date and to support that date with citations to substantial evidence in the record.

## II.     Other Contentions

The parties' remaining disputes focus on the ALJ's findings regarding plaintiff's residual functional capacity at step seven and the application of the grids at step eight. As noted above, the ALJ need not have reached these steps after finding at step six that plaintiff did not have a severe impairment as of July 1, 2009. *See* AR 1082; 20 C.F.R. § 404.1594(f)(6) (stating that if the

13

claimant's current impairments in combination are not severe in nature, then the claimant "will no longer be considered to be disabled"). The Court will therefore address the arguments challenging steps seven and eight only briefly. For the reasons set forth below, the Court finds no error in the weight assigned Dr. Rana's opinion or in the discrediting of plaintiff's testimony.

### A. Assessment of Medical Opinion of Dr. Rana

Plaintiff's main contention is that the ALJ improperly discredited Dr. Rana's finding of limitations from her fibromyalgia. Pl.'s Mot. at 12. If the ALJ had properly credited Dr. Rana's finding and limited plaintiff to light exertional work, plaintiff argues, then the ALJ would have been required to find plaintiff disabled.

On February 6, 2012, Dr. Rana examined plaintiff at the request of the SSA. Dr. Rana noted that plaintiff had "tender points all over" with a history of fibromyalgia and SVT and concluded that plaintiff was limited to light exertional work. AR 815-17. The ALJ accorded little weight to this opinion for several reasons. First, he explained, "Dr. Rana's report does not suggest that she reviewed the records of other health care providers, or that she reviewed Exhibit B17D, which documents that the claimant earned over $10,000 in 2011. . . . To the extent Dr. Rana's opinions concerning the claimant's functional limitations were based on what the claimant told her regarding pain symptoms, those opinions are undermined if what the claimant told Dr. Rana was not accurate or incomplete, whether in reporting the extent and nature of, or restrictions on, her activities of daily living, or in reporting the location and severity of pain symptoms." *Id.* at 1085. For instance, the ALJ noted that Dr. Rana's report states that plaintiff "cannot do much around the house. She just microwaves her food" but omits any mention that plaintiff was working part-time outside the home as a ticket seller. *See id.* Moreover, Dr. Rana's examination was the only one noting multiple tender points in the last several years, which was inconsistent with other post-CPD medical records, including the records of medical professionals who examined plaintiff multiple times between 2010 and 2013 and noted no tender points. *Id.* at 1085.

As a threshold matter, plaintiff misapprehends several issues in her brief. First, she repeatedly argues that the ALJ erred in discrediting Dr. Rana's "diagnosis" of fibromyalgia. Yet

14

Dr. Rana only went so far as to state that plaintiff "complained of" and had a "history of" fibromyalgia. *See id.* at 815-17. Moreover, the ALJ did not disbelieve that plaintiff has a history of fibromyalgia; what the ALJ discredited was Dr. Rana's conclusion that plaintiff was limited to light work. Second, plaintiff erroneously argues that the ALJ's rejection of Dr. Rana's opinion required support by clear and convincing reasons. *See* Pl.'s Mot. at 13-14. This standard applies where an ALJ rejects the *uncontradicted* opinion of a treating or examining doctor. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Here, Dr. Rana's opinion is contradicted by another doctor's opinion; for instance, Dr. Collman testified at the July 2014 hearing that plaintiff had no exertional limitations. *See* AR 1084. Therefore, in order to reject Dr. Rana's opinion, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence.

The Court finds that the ALJ did so here. To determine how much weight to give to a physician's opinion, the ALJ may consider, among other things, the type of relationship (examining, treating, etc.), the extent to which the opinion is supported by evidence such as medical signs and laboratory findings, the consistency with the record as a whole, and the doctor's area of specialization. *See* 20 C.F.R. § 404.1527(c) (evaluating opinion evidence for claims filed before March 27, 2017); *see also Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ explained that Dr. Rana only examined plaintiff once and noted that Dr. Rana was the only doctor in the years surrounding 2012 to find plaintiff had multiple tender points. *See* AR 1085; *see also* AR 844, 882, 904, 912, 924, 1029. The ALJ also properly noted that Dr. Rana's opinion did not suggest that she reviewed other medical records but relied solely on plaintiff's self-reporting, which appeared to omit important information about plaintiff's work outside the home. These constitute specific and legitimate reasons for according little weight to Dr. Rana's opinion when considering plaintiff's residual function capacity at step seven.

**B. Plaintiff's Discredited Testimony**

Plaintiff also argues that the ALJ "failed to properly evaluate [plaintiff's] subjective complaints of pain and depression on her ability to work" and thus erred in discrediting her testimony. Pl.'s Mot. at 18.

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that plaintiff met the first step of the credibility test but went on to find that her "statements concerning the intensity, persistence and limiting effects of these symptoms after the CPD are at times internally inconsistent, and [are] inconsistent with other evidence of record." AR 1084. The ALJ stated the following reasons for discrediting plaintiff's testimony about her symptoms of pain and limitations: (1) plaintiff mentioned nothing about her work as a ticket seller in her 2011 Function Reports, in which she was asked to list the places she went on a regular basis, and failed to disclose she had been able to get of the house enough to work and earn over $10,000 per year since 2007; (2) she claimed that she could not leave home alone but she routinely went to Kaiser alone, either walking in or arriving via car by herself; (3) although she claimed she had sciatica, there was no confirmation of it in the medical record and straight leg raising tests were negative; (4) she claimed that she had episodes of tachycardia approximately once a month that lasted about two to three hours but there was no confirmation of it from any objective medical source; (5) she claimed that she once went to Kaiser in Richmond where they "paused her heart"

and that later she went to Kaiser in Oakland telling them not to "pause" her heart and threatening to walk out, but there was no documentation of that as well; and (6) she "has not provided the names of any medical providers from whom she has sought treatment for tachycardia since 2013, and in 2013 she reported to a medical provider that she had not been seen for this condition since 2011, raising questions about the accuracy of her reports." *Id.* at 1083-84.

In contrast to the ALJ's September 2014 decision, in this most recent decision the ALJ provided lengthy and coherent reasons with citations to the record to show how plaintiff's pain testimony conflicted with the medical evidence. In other words, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting plaintiff's symptom testimony. These reasons include the contradictions between plaintiff's reported daily activity level and her work activity and the inconsistency in her reports of tachycardia. In her motion, plaintiff does not challenge any of the specific reasons that the ALJ cited. *See* Pl.'s Mot. at 18-21. Rather, plaintiff chiefly contends that the ALJ failed to discuss plaintiff's statements of pain and fibromyalgia symptoms and made conclusory findings of inconsistencies between her reports of pain and other evidence of record. *Id.* at 20-21. Defendant argues that plaintiff mischaracterized the ALJ's decision, and the Court agrees. *See* Def.'s Cross-Mot. at 21. In particular, earlier in the decision the ALJ extensively addressed plaintiff's pain and fibromyalgia. *See* AR 1077-82.

Accordingly, the Court finds no error in the weight the ALJ accorded to plaintiff's symptom testimony.

### C. Application of the Grids

Plaintiff also argues that the ALJ improperly relied on the Medical-Vocational Guidelines ("the grids") in finding that plaintiff was not disabled. Pl.'s Mot. at 17-18; 20 C.F.R. Part 404, Subpt. P, App. 2. This argument is premised on crediting Dr. Rana's light work opinion as true. *See* Pl.'s Mot. at 17-18. Because the Court has found above that the ALJ did not err in according little weight to Dr. Rana's opinion, the Court will not address plaintiff's argument further here.

### III. Relief Sought

Plaintiff states that because this is a continuing disability review case, if the Court remands the case for further proceedings, then it must also order reinstatement of her benefits pending those proceedings. *Id.* at 21-23. Plaintiff relies on 20 C.F.R. § 404.1597a(i)(6), which governs "Continued benefits pending appeal of a medical cessation determination." Plaintiff also cites to a Tenth Circuit case and an unpublished case from this district, both of which ordered continued payment of benefits pending remand after the courts vacated and reversed decisions by the ALJ to terminate disability benefits. *See* Pl.'s Mot. at 22-23 (citing *Hayden v. Barnhart*, 374 F.3d 986, 994 (10th Cir. 2004); *Granillo v. Colvin*, No. 14-cv-4658-JCS, 2016 WL 4411811, at *8 (N.D. Cal. Aug. 19, 2016)).

The posture of this case is somewhat unusual, in that here plaintiff's benefits did not originally end due to a medical cessation determination. Rather, unlike the claimants in *Hayden* and *Granillo*, plaintiff's benefits ceased due to work activity. *See* AR 1065. Plaintiff applied for and received expedited reinstatement of benefits, *see id.* at 514, a process which is available for claimants to regain entitlement to benefits when the SSA previously terminated disability benefits due to work activity. *See* 20 C.F.R. § 404.1592b. And as defendant notes, Social Security regulations preclude a claimant from receiving expedited reinstatement of benefits a second time where a claimant previously received provisional benefits for the same previous disability entitlement. *See* Def.'s Cross-Mot. at 25 (citing 20 C.F.R. § 404.1592e(b)).

Under the circumstances presented here, and in light of the limited scope of remand outlined in this Order, the Court will not order reinstatement of benefits pending further proceedings.

*///*

*///*

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment and GRANTS IN PART and DENIES IN PART defendant's cross-motion for summary judgment. This case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order, in order for the ALJ to reevaluate the disability cessation date.

**IT IS SO ORDERED**.

Dated: August 19, 2019

SUSAN ILLSTON
United States District Judge